IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

_____x
UNITED STATES OF AMERICA,        :        Criminal Action
                                 :
              Plaintiff,          :        No.  1:07-cr-169-1
                                 :
v.                               :
                                 :        Date:  August 25, 2008
EULALIA HEADEN,                  :
                                 :
              Defendant.          :
                                 :
_____x


TRANSCRIPT OF SENTENCING HEARING HELD BEFORE
THE HONORABLE DAVID A. FABER, JUDGE
UNITED STATES DISTRICT COURT
IN BLUEFIELD, WEST VIRGINIA

APPEARANCES:

For the Government:          AUSA MILLER A. BUSHONG, III
                             U.S. Attorney's Office
                             U.S. Courthouse & IRS Complex
                             110 Heber St., Room 261
                             Beckley, WV  25801


For the Defendant:           DEBRA A. KILGORE, ESQ.
                             Burton Kilgore Lazenby & Cassell
                             1460 Main St.
                             Princeton, WV  24740


Probation Officer:           Alex Alvarez

Court Reporter:              Ayme Cochran, RPR, CRR

Proceedings recorded by mechanical stenography;
transcript produced by computer.

PROCEEDINGS had before The Honorable David A. Faber, Judge, United States District Court, Southern District of West Virginia, in Bluefield, West Virginia, on August 25, 2008, at 2:27 p.m., as follows:

THE COURT:  The case before the court is the United States against Eulalia Headen, criminal action number 1:07-169-1.

Please note your appearances.

MR. BUSHONG:  Miller Bushong with the United States and with me is Steve Dempsey from the IRS.

MS. KILGORE:  Debra Kilgore, counsel for the defendant, and the defendant is present, Eulalia Headen.

THE COURT:  All right.  Before we go any further, it seems to me that this may be an appropriate case for the court to consider a variant -- downward variant sentence based upon the circumstances of the defendant and, not having given the parties notice of that, and the government is entitled to notice of that, I'm willing to put this off if you have any objection to me proceeding.

MR. BUSHONG:  I have no objection to you proceeding and I'm not sure that you any longer even have to give notice of your intention.  I think the Supreme Court has recently ruled that you don't have to give prior notice to vary, but --

THE COURT:  Well, I didn't know that.  The Fourth Circuit has said you do and --

MR. BUSHONG:  I think I'm right on that, but in any

event, I have no objection to proceeding, Your Honor, with that and I think I can streamline, Your Honor, the court's calculations, if now is an appropriate time to do that.

THE COURT: Well, yes. Go ahead, please.

MR. BUSHONG: Your Honor --

THE COURT: Well, let me first ask Ms. Kilgore if she's been over the presentence report with Ms. Headen and are you prepared to proceed with the sentencing at this time?

MS. KILGORE: Yes, we are.

THE COURT: All right.

Go ahead, Mr. Bushong.

MR. BUSHONG: Your Honor, again, I would say that the probation officers did an excellent job in this case in preparing the presentence investigation report.

I did object to the Base Offense Level on the -- on this defendant's guidelines because I think we do need to arrive at something that is reasonably foreseeable and since we now know that the leaders of this conspiracy, their Base Offense Level was a Level 32 based on 1,000 -- between 1,000 and 3,000 marijuana equivalent kilograms.

The parties, Your Honor, agree and stipulate, if the court will accept the stipulation, that this defendant's Base Offense Level is a 26, which represents between 100 and 400 kilograms of marijuana equivalency, and that's based on the factors of the case, and I can be more specific if the court would like, but the

parties both agree to that level, if the court will accept it.

THE COURT: Well, you need a basis for that. I can't let you, as you know, pick a number out of the air and agree to it.

MR. BUSHONG: Your Honor, it's based on the direction from the Guideline in 2D1.4, Application Note 2, which specifically directs the court, in cases where the drug quantity is uncertain, to approximate the quantity and the court is directed to estimate low where there is some uncertainty and, in this case, Your Honor, given the fact that the defendant is certainly going to qualify for a role reduction, the United States would argue for a minimal role, that she certainly -- the full scope and extent of this conspiracy was not presumably foreseeable to her.

What we do know, based on the cash seized, the cash involved at this defendant's home, the assets involved with this defendant, the actual evidence collected from the wire, the debriefing of Jerry Headen, in particular, since the United States believes he is -- he has been truthful with the United States and other co-conspirators involved, that level, a level 26, we believe represents a fair, reasonable foreseeability figure. The defendant agrees with it. Because of that, Your Honor, we would ask the court to adopt that stipulation.

THE COURT: How many pills does that represent?

MR. BUSHONG: It -- well, I don't have a specific

amount, but it would be between 100 and 400 kilograms of marijuana equivalency and, again, Your Honor, a lot goes into that calculation. It's cash involved, assets involved and pills involved. All of the above.

THE COURT: Well, is it more than just a guess based on the factors that you --

MR. BUSHONG: Well, it's as the Guidelines dictate. We attempt to do that and that is an estimate and, again -- and I'll quote from the case.

THE COURT: So you're saying that, of course, she was aware of her son's activities and -- but not the scope and should be charged with relevant conduct for the conspiracy, but not all of it; is that right?

MR. BUSHONG: Well, under conspiracy law, Your Honor, and relevant conduct law, the court has to determine relevant conduct as to each specific co-conspirator and you only factor in that which is reasonably foreseeable to each co-conspirator.

There are things that her sons did that she had no idea they did, huge quantities of pills that she would be completely unaware of and had no pro-active role in. She didn't store them. She didn't finance them. She didn't assist in any way.

Now that's not to say she didn't know overall that these relatives of hers, her sons, were supporting themselves by dealing drugs, but with respect to her own criminal liability, we can only look to that which is reasonably foreseeable and that's

what we have attempted to do to come up with this figure.

When we estimate the drug amounts involved, and it is uncertain, the District Court is well advised to sentence at the low end of the range which the witnesses and the evidence establishes and that's what we've attempted to do, Your Honor.

THE COURT: Well, that's why I asked you if you -- asked you for a number of hydromorphone pills involved. It seems to me like -- and you've just talked in terms of marijuana equivalency. There's a number of -- a specific quantity of a specific drug they were dealing that gets you there and I want to know where you got that.

MR. BUSHONG: Well, the hydromorphone, Your Honor, is the offense conduct. That is separate from relevant conduct. That was the drugs that were involved in her specific offense of conviction.

THE COURT: But the underlying conspiracy was a hydromorphone conspiracy, was it not?

MR. BUSHONG: Well, it's oxycodone. It's oxycodone and other drugs and that's why we have to use the marijuana equivalency. We have more than one drug here. That's why that calculation has to be used, but because of that, that's how we're -- it's not an exact science. We're just trying to come up with something that's fair.

THE COURT: Can you help us out here, Ms. Kilgore?

MS. KILGORE: Your Honor, Ms. Headen does agree and

stipulate to the Level 26 and the reason is, is she concurs with the court notes from looking at the presentence report and the attachment.

You know, the only evidence that directly links Ms. Headen to the sale or facilitating the sale of any drugs is her July, 2007 phone conversation. Other than that, there is no other evidence that directly links her to selling any drugs, facilitating the sale of any drugs. She doesn't know who the suppliers are for Terry and Jerry, who they sold to, how they sold it or any of that.

THE COURT: There's a lot of circumstantial evidence, is there not, that she knew what was going on?

MS. KILGORE: I don't deny that. She does not deny that she knew that they were dealing. She doesn't deny she enjoyed the benefits of their drug money and that she perhaps enabled them by allowing them to use her home to store drugs and to store money and to help them purchase vehicles, but, clearly, the scope of her own involvement, which is how the court has to look at it, is not as broad as the activities of Terry and Jerry and, therefore, all of their activities in criminal activity cannot be attributed to her and so that's why we agree that narrowing the scope to the level of 26 is more reasonably foreseeable to Ms. Headen.

Of course, we also would argue, when we get to that point, to downward depart from 26 after all the adjustments are made.

THE COURT: Well, my clerk's calculation is -- would take at least 747 80 milligrams of OxyContin to get the 100 to 400 kilogram marijuana equivalency and -- or the probation officer's calculation.

MR. BUSHONG: Your Honor, if I might, this might help and might make it more convoluted, but it's hard, with respect to this defendant, to come up with a number of pills that you can directly relate to this defendant.

For example, one of the pieces of evidence in this case is that when the Headen's were meeting with Craig Cook to purchase one of the vehicles, they had stored at this defendant's house a large quantity of cash. The United States believes that that's drug money. It was about $12,000.00 in cash. If you converted all of that to pills, you're certainly in that range the court just referenced.

We believe that most of that money is drug money and I think the evidence establishes that, but we don't have a set number of pills like we can arrive at with some of the other defendants who are actually involved in distributing those pills. So we have to look to other evidence and that's -- that's how we've tried to come up with something that's fair here, but a specific number of pills that we can directly attribute to this defendant, I don't think we can do that.

I think we have to look at the assets, the cash, her role, the other factors in the case, to focus on what is reasonably

foreseeable to her. I don't think we can -- anybody can say the full weight and scope of the conspiracy is foreseeable to this defendant. She just couldn't have known all that was going on.

THE COURT: Well, I think you've given me enough of a basis here to accept the stipulation and, you know, I'm mindful of my duty to make sure there's a factual basis in the record for this and I think there is, in general, and I'm going to accept the stipulation and find that the Base Offense Level is 26.

And I accept the presentence report. It will be filed and made a part of the record and will be placed in the record under seal. In the event of an appeal, counsel on appeal will be permitted access to the sealed report except for the recommendations section.

Except as may be modified by specific rulings made at this hearing, and I think the court has already made one, the court adopts as its findings the facts and conclusions contained in the presentence report.

In order to fulfill its reporting obligation under Rule 32, the court orders that a copy of its written memorandum of sentencing hearing and Report of Statement of Reasons to be prepared at the conclusion of this hearing be appended to and accompany any copy of the presentence report and made available to the Bureau of Prisons.

I have not withheld any information from the report under Rule 32.

Are there other remaining matters that need to be ruled upon by the court that are in dispute here?

MR. BUSHONG: Your Honor, the presentence investigation report recommends a three-level role reduction. The United States is in favor of a four-level role reduction. The United States believes the defendant does qualify as a minimal participant under Application Note 4 of 3B1.2. We believe that the defendant meets that definition, Your Honor.

THE COURT: Ms. Kilgore, do you want to address that?

MS. KILGORE: Yes, Your Honor. We, again, concur with the United States Attorney that, clearly, Ms. Headen meets the definition of minimal participant. Clearly, she had no knowledge of the scope and extent of Terry's and Jerry's operation or of the activities of the others. She is clearly the least culpable in this chain of activity and persons which meets the definition of minimal participant under the Guidelines.

MR. BUSHONG: Your Honor, I would add that of all of the co-defendants charged in this case, she, for sure, is the least culpable. There are other co-conspirators who proactively dealt drugs, who qualified for a role reduction of two or three and, given that, and to be consistent, there should be some reflection of the very least culpable and the United States believes that this defendant would qualify.

THE COURT: Well, she's certainly the least culpable of the ones that have come before me so far and I note that minimal

participant, as defined in Application Note 4 to Section 3B1.2, is "a defendant who is plainly among the least culpable of those involved in the conduct of a group. Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and the activities of others is indicative of a role as a minimal participant" and, although the note says this adjustment is to be used infrequently, it seems to me that this is an appropriate case for it and I'm going to allow for a four-level reduction.

MR. BUSHONG: Your Honor, the other issue is the safety valve, which the United States is in favor of, which is factored into the presentence report, and a three-level reduction for acceptance of responsibility, including the third level.

The United States and the defendant, I believe, arrived together collectively at an adjusted level of 17 with a Criminal History Category of I. The range prior to the court varying would be 24 to 30 months.

THE COURT: Do you agree with that, Ms. Kilgore?

MS. KILGORE: Yes, we do.

THE COURT: All right. The court concludes and finds that the Base Offense Level is a 26. The Total Offense Level is 17. The court granted a two-level downward adjustment under the safety valve provisions of Section 2D1.1(b)(6) for meeting the criteria set forth and -- one to five, a four-level decrease for her role as a minimal participant under 3B1.2.

Criminal History Category is I. That would give us a Guideline range of imprisonment for a term of 24 to 30 months, supervised release for one year, a fine of $5,000.00 to $50,000.00 and a special assessment of $100.00.

Is there any objection to the court's calculation of the Guidelines?

MR. BUSHONG: No, Your Honor.

MS. KILGORE: No.

THE COURT: Ms. Headen, pursuant to the sentencing guidelines at your original plea hearing on October 16th of last year, I deferred final acceptance of your plea agreement and the adjudication of guilt pending receipt of the presence report in your case.

Having now received that report and ruled upon the issues raised thereby, I find that the charge to which you pleaded guilty adequately reflects the seriousness of the offense behavior and I find that accepting your plea agreement will not undermine the statutory purposes of sentencing.

You pleaded guilty to a one-count information charging you with a violation of 21 U. S. C. 843(b), using a communications facility to commit, cause and facilitate a felony; that is, aiding and abetting possession with intent to distribute hydrocodone in violation of 21 U. S. C. 843(b).

I find that the guidelines allow for a sentence that will satisfy the guidelines and the purposes of sentencing with regard

to the offense of conviction.

I, therefore, accept your plea of guilty, find you guilty and you stand charged -- or convicted of the charge to which you have tendered a guilty plea, that is a violation of 21 U. S. C. Section 843(b).

I have received and read a packet of letters on behalf of this defendant and they will be filed and made a part of the record with the presentence report and I'll recognize you for any argument you care to make, Ms. Kilgore, including whether or not the court should grant a variant sentence, although the re-calculation of the guidelines here are substantially lower than I thought they were going to be, and I find less of a reason for that now than I did coming in, but I'll still let you argue for it, if you think it's appropriate.

MS. KILGORE: Yes, Your Honor. Pursuant to 18 U. S. C. -- pursuant to 18 U. S. C. 3553, when you look at the nature and circumstances of this offense and the history and the characteristics of the defendant, we believe, Your Honor, that this is a case that would justify the court in going below the guidelines and imposing a sentence that does not include imprisonment.

I would submit, Your Honor, this is a somewhat unique case. Ms. Headen is a 64-year-old woman with no prior criminal history, no hint of any prior criminal activity in her life, except through her sons, and she surely did not raise her sons to commit

crime.

Rather, she -- as she says, she knew what her sons were doing. She knew that they were dealing drugs, but, as their mother, she couldn't tell them no and she couldn't tell them not to come to her house. She couldn't stop them from coming to her house and, I believe, Your Honor, that they took advantage of her. They took advantage --

THE COURT: Well, she accepted a lot of the benefits of their activity, did she not?

MS. KILGORE: She did, Your Honor. She got sucked into it and ultimately became criminally liable with them, but it started with her not being able to say no.

She also has raised not only her own daughter, but she's raised and adopted a total of eight other children from other families. Right now -- and this includes Terry and Jerry, who she adopted when they were young.

Right now, she has in her care four children who are dependent on her. She also cares for her husband, who is partially paralyzed and disabled, and the letters that the court received from the community, I believe the overall theme of those letters, she is a mother to the community. She takes care of others by feeding, giving them comfort, advice, and that is her contribution to the community.

Finally, Ms. Headen herself suffers from substantial health conditions. They are outlined and pretty much detailed in the

presentence report. Some of these include diabetes, for which she takes daily insulin injections, and all the health conditions that are associated with diabetes. She has congestive heart failure and has a pacemaker, and I would point out that Section 5H1.1 of the Sentencing Guidelines states that the court -- or states that age and health may be a reason to depart downward when punishment, such as home confinement, would be equally efficient, unless more costly than imprisonment and we submit, Your Honor, that given the unique circumstances of this case and her age and health, that this would be a good reason to depart downward in this case.

THE COURT: Ms. Headen, is there anything you want to say to me before I sentence you?

THE DEFENDANT: Yes, Your Honor. I would like to say that as I've sat here, I've thought about my role as a mother. I always thought that I was a good mother to my children. I made good decisions. I made bad decisions.

Truly, I can say today that this is a bad decision that I made and I do ask you to -- if there is a word bigger than sorry, then that's the word that I want to say. I truly am sorry for the role that I've played in any part of this and I do ask you to have mercy on me, for I am truly sorry.

THE COURT: Thank you.

Mr. Bushong?

MR. BUSHONG: The United States recognizes that the

court, under the current guidelines, has a lot of discretion. The United States would have no objection to whatever sentence the court deems appropriate.

THE COURT: I'm going to take a recess and figure this out. I'm not -- I think this case is appropriate for a small variance from the Guideline sentence range, but not a real large one. So as I go through this, I don't want to send the wrong message.

The court notes in imposing a sentence outside the Advisory Guideline range, the court must first calculate the Guideline range applicable to the defendant, give both the defendant and the government an opportunity to argue for a sentence they consider to be appropriate, both of which I have done and, in this case, although the government may or may not be entitled to the notice of the intent to consider a variance, I'm assuming that if they are entitled to notice, Mr. Bushong has clearly waived it.

The court held in the *Blatstein* case, 482 Fourth Circuit 725, that a downward variance must be given only with reasonable notice to the government and then the court, after considering the factors under 18 U. S. C. 3553(a), must determine that a sentence below the advisory Guideline range is necessary to satisfy the objectives of sentencing.

Judge Copenhaver, of this court, recently in the *United States v. Pauley* at 511 F.3d 468, imposed a downward variant

sentence in that case and indicated that the court must consider the sentencing factors under 3553(a), including the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence imposed and the other 3553(a) factors, all of which I have considered.

I think a modest variance is called for in this case by the factors Ms. Kilgore pointed out on the record. Ms. Headen's age and physical condition, her responsibility for others and her service to the community must be balanced against a need to impose a sentence here that provides proper punishment and a significant deterrent impact because of the nature of the criminal activity involved.

In balancing all of those factors, the court has determined that a three-level downward adjustment in the guidelines is an appropriate variance. I'm going do depart downward to level 14, which at Criminal History Category I, which leaves a sentencing range of 15 to 21 months.

I considered all the intermediate levels starting at 17 and going down and, also, going the other way at Level 1 and proceeding upward to level 14, and I find that all the intermediate levels do not give the court the appropriate sentencing range under the facts and circumstances of this case and that a level 14 is the appropriate level.

The fine range becomes $4,000.00 to $40,000.00, I believe, and supervised release would remain one year and, of course, a

$100.00 special assessment.

Is there any objection to my calculation of the revised guidelines that would apply to the variance?

MR. BUSHONG: No, Your Honor.

MS. KILGORE: No.

THE COURT: Ms. Headen, if you will stand there with your counsel, of course, I'm prepared to sentence you.

Pursuant to the Sentencing Reform Act of 1984, it is the judgment of the court that the defendant, Eulalia Headen, is hereby committed to the custody of the Bureau of Prisons for a term of 15 months.

Upon release from imprisonment, the defendant shall be placed on supervised release for one year. Within 72 hours of release from custody of the Bureau of Prisons, the defendant shall report in person to the district in which she is released.

While on supervised release, the defendant shall not commit any other federal, state or local crime, shall comply with all the standards of conditions of release that have been adopted by this court by its current standing order and the following two additional conditions:

First, the defendant shall be incurring -- prohibited from incurring new credit charges or opening additional lines of credit without approval of the probation officer and shall provide the probation officer access to any requested financial information.

And, second, the defendant shall not posses a firearm, ammunition, destructive device or any other dangerous weapon and shall reside in a residence free from said items.

The defendant is further ordered to pay an assessment of $100.00, which is due immediately.  If she lacks the means to pay it immediately, it may be paid in installments of not less than $25.00 per quarter through participation in the Bureau of Prisons Inmate Financial Responsibility Program during her term of incarceration.  Any remaining balance shall be paid during the term of supervised release.

The court finds that the defendant does not have the financial means to pay a Guideline range fine or a fine in any amount and departs downward from the guidelines and imposes no fine.

Is there any objection to the form of the sentence?

MS. KILGORE:  No, sir.

MR. BUSHONG:  No, Your Honor.

THE COURT:  Okay.  You may be seated while I give the reasons.

I felt like due to the nature of the offense in this case and the very serious problem we have in this part of the world with the drug trade, including the types of drugs that were involved in this case and the fact that when the defendant's sons lost their -- an amount of the drugs they were holding for sale in the rain beside the road, it was this defendant who provided a

substitute supply of pills to get them over the -- that little gap in their business so they could continue in the drug trade and I feel like that was -- in my opinion, this was a serious violation of the law and one that requires a modest -- at least a modest term of imprisonment in order to send an appropriate message that that kind of conduct is -- will receive significant consequences when brought to the attention of this court.

I considered all the factors under Section 3553(a) and the directives of the *Booker* and *Pauley* and other appropriate authority in reaching my decision as to the proper term of imprisonment.

I find that the sentence imposed is sufficient, but not greater than necessary, to achieve the objectives set forth in all of those authorities.

The one-year term of supervised release is imposed to allow the maximum period available to the court for probation to monitor the defendant's efforts to return to a law-abiding lifestyle following her period of incarceration.

In reaching the decision to impose no fine, I make the following findings under Section 3572(a) of Title 18:

Defendant's income, earning capacity and financial resources are as stated in the presentence report.

A fine in any amount would constitute an undue burden upon the defendant in view of her financial situation.

There is no identifiable pecuniary loss inflicted upon

others as a result of the offense of conviction and the evidence shows no illegally obtained gains from the offense of conviction still in the defendant's possession.

Ms. Headen, you have ten days to appeal. If you wish to appeal, you must file within ten days a Notice of Appeal with the Clerk of this court.

If you wish to appeal and cannot afford to hire counsel to represent you on appeal, counsel will be appointed for you and, if you so request, the clerk will prepare and file forthwith a Notice of Appeal on your behalf.

Is there anything else to take up with regard to this matter today?

MS. KILGORE: Yes, Your Honor. We would ask that she be allowed to self-report when the Bureau of Prisons so notifies her and she remain on a personal recognizance bond.

THE COURT: Does the government have a position on that?

MR. BUSHONG: No objection, Your Honor.

THE COURT: You do not have any objection to that?

MR. BUSHONG: No, Your Honor.

THE COURT: You do not see her as any possible danger to any other person in the community?

MR. BUSHONG: No, Your Honor.

THE COURT: Based upon what I've learned about you, Ms. Headen, and the representations of counsel, including counsel for

the government, I find by clear and convincing evidence that you are not a flight risk or a danger to any other person in the community and I'm going to allow you to self-report to begin serving your time.

If you receive a reporting date within 30 days of today, that is by Wednesday, September 24th, you are to report as directed.

If Wednesday, the 24th of September, comes and you have not received a reporting direction by that time, you are to report to the office of the U. S. Marshal in Charleston, West Virginia on that day before 2:00 p.m. to begin serving your time.

It is my duty to inform you that the failure to report is a separate felony offense against the laws of the United States.

I'm continuing the present bond you are on now. You will be subject to the same bond and all the same conditions, but now that you have been sentenced, it is more necessary than ever that you understand and abide by all the conditions of the bond because any violation of a bond condition could result in you being held in custody pending your reporting date.

Is there anything further to do at this hearing?

MS. KILGORE: No, sir.

MR. BUSHONG: Thank you, Your Honor.

(Proceedings concluded at 3:08 p.m., August 25, 2008.)

CERTIFICATION:

I, Ayme A. Cochran, Official Court Reporter, certify that the foregoing is a correct transcript from the record of proceedings in the matter of United States of America, Plaintiff v. Eulalia Headen, Defendant, Criminal Action No. 1:07-cr-169-1, as reported on August 25, 2008.


/s/Ayme A. Cochran, RPR, CRR            11-3-2008

Ayme A. Cochran, RPR, CRR                DATE